

# Health Care Workers Union
# SEIU 250
### AFL-CIO

560 20th Street
Oakland, CA 94612-1602

510-251-1250 • 800-585-4250
www.SEIU250.org
*"Quality Health Care for All"*

## COLLECTIVE BARGAINING AGREEMENT
## with
## MARINER POST-ACUTE NETWORK

Effective November 30, 2004 Through June 15, 2005

EXHIBIT __A__ PAGE __6__

Dear Local 250 Member,

Working in long term care is hard work – physically and emotionally.

Unfortunately, the work we do is not appreciated by the public at large, by most politicians, and even some of our employers.

Consequently, long-term care has become the sweatshop of the health care industry as nursing home workers must work harder and receive lower wages and benefits than our counterparts in acute care.

Over two-thirds of the care we provide is funded by the State of California through the Medi-Cal program, and our employers are basically government contractors. This means the big, important decisions about nursing home funding, staffing levels and other important matters are made by legislators and/or DHS bureaucrats.

Therefore, the solution to almost all of our problems – low wages, understaffing, poorly maintained buildings – depends on our ability to convince the State to make the right decisions, changes, and reforms.

In December of 2000, our Nursing Home Division Stewards Council adopted the goal of getting nursing home workers the same wages and benefits as acute care workers.

This is the right goal for ourselves, our residents, and our employers. But nobody in State government is just going to give us what we deserve without a struggle just because it's the right thing to do.

To achieve our goal will take hard work. We know we can achieve results because of the successes we have had in the past two years:

♦ Two Medi-Cal wage pass-throughs in 1999 and 2000

♦ Staffing ratio legislation in 2001

♦ Specific budget allocation in 2001-2002 fiscal year for facilities with a binding, written, enforceable agreement to increase worker wages and benefits

But we have a long way to go.

This in turn means we have to be politically active and involved:

Politicians respond to political power.

♦ We must make sure candidates for State office understand our issues and agree to support our cause as a condition of receiving our SEIU endorsement.

♦ We must be prepared to support our endorsed candidates through voluntary contributions to COPE, the Union's political action fund, and by talking to our co-workers, friends and neighbors by telephoning them or going door-to-door at election time.

♦ We must be prepared to hold elected officials accountable and to make our voices heard by going to Sacramento with our co-workers whenever it is necessary to make sure the State does the right thing.

Get involved in the Union to add your voice to the cause. The more members that actively participate in the struggle, the sooner we will accomplish our just goals.

Our fate is in our hands. We urge you to get involved today.

In Solidarity,

Sal Rosselli
Sal Rosselli
Local 250 President

Joan Emslie
Joan Emslie
Local 250 Secretary-Treasurer

EXHIBIT __A__ PAGE __7__

# TABLE OF CONTENTS

|  |  | PAGE |
|---|---|---|
|  | PREAMBLE | 1 |
| SECTION 1 | RECOGNITION | 1 |
| SECTION 2 | MANAGEMENT RIGHTS | 2 |
| SECTION 3 | UNION MEMBERSHIP | 3 |
| SECTION 4 | VOLUNTARY WRITTEN ASSIGNMENT OF WAGES | 4 |
| SECTION 5 | UNION VISITATION | 5 |
| SECTION 6 | UNION SHOP STEWARDS | 6 |
| SECTION 7 | BULLETIN BOARD | 7 |
| SECTION 8 | NO STRIKES OR LOCKOUTS | 7 |
| SECTION 9 | GRIEVANCE AND ARBITRATION | 8 |
| SECTION 10 | DISCIPLINE AND DISCHARGE | 11 |
| SECTION 11 | HIRINING, PROBATION, POSTING VACANCIES | 13 |
| SECTION 12 | DISCRIMINATION | 14 |
| SECTION 13 | CATEGORIES OF EMPLOYEES | 14 |
| SECTION 14 | SENIORITY | 16 |
| SECTION 15 | JOB DESCRIPTIONS | 18 |
| SECTION 16 | STAFFING AND WORKLOAD DISTRIBUTION | 18 |
| SECTION 17 | HOURS OF WORK | 19 |
| SECTION 18 | WAGES | 21 |
| SECTION 19 | PAID VACATIONS | 23 |
| SECTION 20 | PAID HOLIDAYS | 25 |
| SECTION 21 | PAID SICK LEAVE | 26 |

EXHIBIT ___A___ PAGE ___8___

| SECTION 22 | HEALTH, DENTAL AND VISION | 27 |
| SECTION 23 | SEIU NATIONAL INDUSTRY PENSION PLAN | 30 |
| SECTION 24 | LEAVES OF ABSENCE | 32 |
| SECTION 25 | BREAVEMENT LEAVE | 34 |
| SECTION 26 | PAID JURY DUTY | 34 |
| SECTION 27 | EDUCATIONAL LEAVE | 35 |
| SECTION 28 | TRAINING AND IN-SERVICE | 35 |
| SECTION 29 | LIMITED LIGHT DUTY WORK | 37 |
| SECTION 30 | NOTICE OF TRANSFER | 37 |
| SECTION 31 | SUCCESSORSHIP AND JOB SECURITY | 37 |
| SECTION 32 | SUB-CONTRACTING | 38 |
| SECTION 33 | REGIONAL LABOR-MANAGEMENT COMMITTEE | 38 |
| SECTION 34 | SAVINGS CLAUSE | 38 |
| SECTION 35 | TERM OF AGREEMENT | 39 |
| | APPENDIX "A" WAGE RATES | 40 |
| | APPENDIX "B" – PREVIOUS RECOGNITION CLAUSES | 47 |
| | APPENDIX "C" – FRUITVALE CARE | 50 |
| | APPENDIX "D" – DIAMOND RIDGE HEALTH CARE CENTER | 52 |
| | APPENDIX "E" – VALE CARE CENTER | 54 |
| | APPENDIX "F" - CREEKSIDE | 55 |
| | MEMORANDUM OF UNDERSTANDING | 56 |

EXHIBIT _A_ PAGE _9_

# AGREEMENT

**THIS AGREEMENT** is entered into as of November 30, 2004 by and between **MARINER POST-ACUTE NETWORK,** (hereinafter referred to as "the Employer"), and **SEIU HEALTH CARE WORKERS' UNION, LOCAL 250, AFL-CIO** (hereinafter referred to as "the Union") and shall be known as the Northern California Regional Master Agreement.

## PREAMBLE

Both parties recognize that it is to their mutual advantage and for the protection of the patients to have efficient and uninterrupted operation of the Hospital. This Agreement is for the purpose of establishing such harmonious and constructive relationships between the parties and that such results will be possible.

The Union and the Employer agree to encourage all personnel to treat one another, regardless of position or profession, with dignity, respect and trust and recognize the individual contribution each of us makes in our daily work.

## SECTION 1. - RECOGNITION

The Employer recognizes the Union as the exclusive bargaining agent for all of its employees in the bargaining unit as follows:

As of 1995, the bargaining unit is a merged bargaining unit consisting of a combination of the previously separate facility-based bargaining units that existed at Almaden Care & Rehabilitation, Creekside Health Care Center, Diamond Ridge Health Care Center, Driftwood Manor, Excell HealthCare Center, Florin Care Center, Fremont Health Care Center, Fruitvale Care Center, Hayward Hills Convalescent Hospital, Parkview Health Care Center, Skyline Convalescent Hospital, and Vale Care Center as outlined in Appendix A - Wage Rates and Appendix B - Previous Recognition Clauses.

EXHIBIT____*A*____,PAGE__l0

1

Included in the bargaining unit are all employees in those classifications previously included and any other classifications which may be established within the scope of the duties now included within those classifications.

Any new classifications established during the term of the Agreement shall be subject to negotiations between the Employer and the Union.

Excluded from the bargaining unit are all Registered Nurses, office clerical, medical records clerks, activity workers (except in the Vale facility), all professional employees, guards, department heads and supervisors, as defined in the National Relations Act, as well as all employees in those classifications previously excluded, as provided in Appendix E-Previous Recognition Clauses.

The Employer and the Union, through the Regional Labor-Management Committee, may, by mutual agreement, establish procedures whereby unrepresented employees in the covered facilities who so desire may elect to be represented by the Union and accreted to the bargaining unit.

## SECTION 2. - MANAGEMENT RIGHTS

A.   The Employer specifically reserves all rights, powers, and authority inherent in and/or customarily exercised by management, except as otherwise specifically designated or modified by this Agreement. The management of the facility and the direction of the work force, including the selection and determination of the number of employees and the number of work shifts are vested exclusively with the Employer. Said rights include the right to hire, promote, discipline, suspend, transfer within the facility, or discharge for cause; the right to lay off, temporarily or permanently; the right to schedule hours, including overtime; the right to establish reasonable standards of performance for employees; and the right to establish reasonable work rules. The Employer has the sole right to determine the services it will offer, the number of employees necessary to

EXHIBIT _____A_____ PAGE __11__

perform such services; the type of supplies and equipment it will use, including the introduction of new and improved methods of operations; the quality of services necessary and the location and continuity of its business. The above rights do not exclude the exercise of management prerogatives reasonably necessary to the safe and efficient operation of the facility which have not been specifically enumerated.

B.    The Employer will exercise the above rights in a reasonable and consistent manner.

## SECTION 3. - UNION MEMBERSHIP

A.    Not later than the thirty-first (31st) day following the beginning of employment, or the effective date of this Agreement, or the execution date of this Agreement, whichever is later, every employee subject to the terms of this Agreement shall, as a condition of employment, become and remain a member of the Union, paying the periodic dues and initiation fees uniformly required, or, in the alternative, shall, as a condition of employment, pay a fee in the amount equal to the periodic dues and initiation fees uniformly required as a condition of acquiring or retaining membership, or, if the employee objects to the payment of that agency fee, such employee shall, as a condition of employment, pay that portion of the agency fee that is related to the Union's representation costs.

B.    At the time a new employee is hired who will be subject to this Agreement, the Employer shall deliver to the employee a written notice stating that the Employer recognizes the Union as the collective bargaining agent for the employees covered by this Agreement and quoting or paraphrasing the provisions of this Section of the Agreement, form to be furnished by the Union. Not later than the tenth (10th) of each month, the Employer shall provide the Union with the names, addresses and classifications of work of new employees and the names of employees terminated.

EXHIBIT __A__ PAGE __12__

C.  Upon request to the Executive Director, not more than three (3) times each calendar year, the Employer will provide the Union with the names, addresses, classifications, social security numbers and wage rates of employees.

D.  Upon written notice to the Employer from the Union that an employee has failed to maintain Union membership in good standing (which shall mean payment of dues and initiation fees uniformly required of all members), the Employer will, not later than fifteen (15) days from receipt of such notice, terminate said employee.

## SECTION 4. - VOLUNTARY WRITTEN ASSIGNMENT OF WAGES

A.  During the term of the Agreement, the Employer will honor written assignments of wages to the Union for payment of union membership fees, provided such assignments are voluntarily entered into by union members. The initiation fee will be withheld in four (4) equal amounts over successive payroll periods. Monthly dues will be withheld on a monthly basis. Such assignments shall be submitted on forms mutually agreed upon.

B.  The Employer will also honor written assignment of wages to the Union for the payment of voluntary contributions to the Union's Committee on Political Education (COPE) Fund, when such assignments are submitted in a form agreed to by the Employer and the Union, and will remit such contributions to the Union in accordance with the procedures set forth in dealing with the deduction and remittance of union dues above.

C.  The Union shall indemnify and hold the Employer harmless against all claims, demands, actions or other liabilities that may be made against or incurred by it arising from or by reason of any action by the Employer in reliance upon signed authorization cards furnished to the Employer by the Union for employees or for the purpose of complying with any of the

4

EXHIBIT ___A___ PAGE __13__

provisions of this Section. The Union will have no monetary claim against the Employer by reason of failure to perform under this Section.

D.  Union dues, initiation fees and COPE contributions (if applicable) deducted from employees' pay pursuant to this Section shall be remitted to the Union no later than ten working days following the date of deduction.

In order to facilitate reconciling the dues payment and to properly credit members for the payment of dues, initiation fees, and COPE contributions, the Employer shall provide the following in hard copy and electronic form (on disk in CSV (comma separated variable length) format or in an Excel file:

A list of employees in alphabetical order including the following information: hire date, social security number, classification, department, work location, hourly rate of pay, gross wages for the pay period, and amounts withheld – separately listing and totaling initiation fees, monthly dues, and COPE contributions (if applicable), and any other deduction (if applicable), indicating the pay period(s) for which the deductions were made.

The Employer shall also provide a list of bargaining unit employees for whom no amounts were deducted and the reason for the lack of deduction (termination (indicating date), leave of absence (indicating dates), deceased (indicating date), new hire (indicating date), etc.). The Employer will promptly remit monies deducted pursuant to such assignments, with a written statement of the names of employees for whom deductions were made.

E.  Employees will be allowed to enroll in the Credit Union offered by the Employer.

## SECTION 5. - UNION VISITATION

A.  Duly authorized Union Field Representatives shall be allowed to visit the premises of the Employer for the purpose of ascertaining

5

EXHIBIT____A____PAGE _14_

whether this Agreement is being observed. This privilege shall be exercised reasonably.

B. Union Field Representatives shall report, in person, when reasonable, to the person in charge at the time of any visit and shall not interfere with the normal conduct of work.

C. The Union Field Representative shall have access to the Employer break rooms and may use this area to talk with the employees during their designated meal period and break periods.

D. Union meetings on facility premises shall only be held with mutual agreement by the Field Representative and Administrator.

E. Field Representatives may not enter patient rooms under any circumstances, except with the authorization of the Administrator or Director of Nursing.

## SECTION 6. -- UNION SHOP STEWARDS

A. The Union may designate Shop Stewards for the purpose of administering the Collective Bargaining Agreement including receiving and processing grievances. The Union shall advise the Employer in writing as to the identity of the Stewards.

B. For the purpose of investigating and presenting grievances to the Employer for adjustment, Shop Stewards may be granted release time from their duties without loss of pay, upon prior approval and with reasonable notice to their Administrator, Director of Nursing or immediate supervisor. Requests shall not be unreasonably denied.

C. Shop Stewards may hold Union meetings on employees' non-work time. Shop Stewards and Employer representatives may meet at mutually agreed upon times.

EXHIBIT ___A___ PAGE ___15___

D.   A Shop Steward shall be permitted to make a presentation about the Union at new employee orientation.

E.   The Employer agrees that Shop Stewards will not be hindered, coerced, restrained or interfered with in the performance of their duties of investigation and presentation of grievances, complaints and disputes, as provided for in this Section.

F.   Stewards with over one (1) year of service may request a leave of absence of up to two (2) weeks to work on Union-related activities. Requests must be submitted at least thirty (30) days prior to the beginning of the leave. The granting of the leave is at the Employer's discretion based on the facility's needs, but no request shall be unreasonably denied.

## SECTION 7. - BULLETIN BOARD

The Union shall have exclusive use of a bulletin board (of at least 3' x 4') in each employee break room. Union Field Representatives will, as a courtesy, provide the Administrator a copy of any notice(s) posted on the bulletin board.

The Union and the Employer agree that their private and public communications, including bulletin board postings, stickers, leaflets, buttons and t-shirts will focus on the merits of an issue and that they will not engage in personal attacks or make derogatory or false comments about each other, the leadership of their respective organizations, or resident care.

## SECTION 8. - NO STRIKES OR LOCKOUTS

A.   It is agreed that during the life of this Agreement, there shall be no lockout on the part of the Employer at the covered facilities and no strike, sympathy strike, walkout, slowdown, or other interruption of work at the covered facilities on the part of the Union, whether or not the cause therefor was or was not subject to arbitration.

EXHIBIT ___A___ PAGE __16__

B. The Union agrees that during the term of this Agreement or any extension of this Agreement, neither its officers nor its members will call, instigate, participate in or condone any strikes, sympathy strikes, walkouts, slowdowns, picketing or other interruption of work at the covered facilities.

C. Neither the violation of any provision of this Agreement by the Employer, nor the commission of any act by the Employer constituting an unfair labor practice, shall excuse the Union, or any of its members or representatives, or any employee from their obligations under Federal Labor Law or any provision of this Agreement.

## SECTION 9. – GRIEVANCE AND ARBITRATION

A grievance shall be defined as a claimed violation of a specific provision or provisions of this Agreement and shall be handled in the following manner, provided, however that any grievance arising out of the exercise of the rights set out in Section 2A, Management Rights, shall not be the subject of a grievance or arbitration, except to the extent that these rights are otherwise limited by the terms of this Agreement.

STEP I
It is understood that an employee has no formal grievance until he/she or an authorized Shop Steward has discussed such complaint with his/her immediate supervisor within fifteen (15) working days from the date of the event giving rise to the concern, or the date the event became known.

The immediate supervisor will give the affected employee(s) or the Shop Steward a Step I response within three (3) working days of the Step I meeting. The Step I response will settle the matter, unless appealed to Step II. Should the Step 1 grievance discussion not take place, any written grievance must be filed within fifteen (15) working days of the event.

EXHIBIT ___A___, PAGE __17__

8

## STEP II

If the matter is not resolved at Step I, it shall be reduced to writing and submitted to the Administrator within seven (7) working days of the Step I response or seven (7) working days from the time the immediate supervisor should have responded in Step I.

The written grievance shall contain all pertinent information including name of employee(s), the date of the incident, the section of the Agreement allegedly violated and the remedy sought.

The Union Field Representative or the Shop Steward and the Administrator shall arrange a mutually agreeable date to meet within ten (10) working days from the receipt of such grievance for the purpose of attempting to settle the matter. The Administrator shall respond to the written grievance in writing within five (5) working days following the meeting. The Step II response will settle the matter, unless appealed to Step III.

## STEP III

If the parties are unable to resolve the dispute through the foregoing procedure, either party may request, in writing, within fifteen (15) working days of the Step II response or lack of response, that the matter be referred to the Director of Operations or designee.

Upon receipt of the written Step III grievance request, the Employer's Director of Operations and the Union Field Representative shall schedule a meeting at the earliest possible mutually agreeable date in an attempt to resolve the matter. The decision of the Director of Operations or designee will be delivered, in writing, within ten (10) working days following the date of such meeting. The Director of Operations' Step III response will resolve the matter, unless it is forwarded to arbitration, as provided hereinafter.

## STEP IV - ARBITRATION

A.   Either the Union or the Employer may request arbitration of a grievance which remains unresolved by serving a written demand for arbitration upon the other within ten (10) working

EXHIBIT___A___,PAGE___18___

days from the date of the proceedings described in Step III above and by requesting a panel from the American Arbitration Association. No alleged violation of the Agreement or claim for relief shall be submitted to arbitration unless it has been raised in a timely fashion, filed and submitted in accordance with the procedure identified in the preceding sections, unless the parties agree otherwise.

The arbitrator shall be selected by alternate striking from the list requested from and furnished by the American Arbitration Association until one name remains.

In rendering a decision, the arbitrator shall be governed and limited by the provisions of this Agreement and the expressed intent of the parties as set forth in this Agreement. The arbitrator shall have no power to add to, subtract from, or modify any of the terms and provisions of this Agreement and shall consider and resolve only such issues as are raised by the written grievance. The decision of the arbitrator shall be final and binding upon both parties hereto and upon the employee or employees covered; however, the arbitrator shall make no award outside the scope of the authority outlined herein affecting a change, modification or addition to this Agreement and shall confine judgment strictly to the facts submitted in the hearing, the evidence before him/her and the terms and provisions of this Agreement.

B.  The arbitrator shall notify each party of his or her decision within thirty (30) days of the arbitration hearing or thirty (30) days from the receipt of the post-hearing briefs, if the parties file briefs.

C.  The expense of the arbitration shall be borne equally by the parties. The total cost of any stenographic record which may be made or transcripts thereof shall be paid by the party ordering same, unless the parties jointly agree otherwise.

EXHIBIT ___A___ , PAGE __19__

## Additional Grievance Administrative Provisions

♦ Grievance settlements reached in Step I or Step II shall not establish a precedent for either party, unless mutually agreed to in writing.

♦ With the exception of discharge, which will be filed at Step II within five (5) working days of the discharge, all other grievances must be processed through the aforementioned procedure prior to a request for arbitration being made or honored.

♦ The time limits as set forth in this Section may be extended by mutual agreement between the parties. If such extension is verbal, there shall be written confirmation of such extension by the party requesting the extension.

♦ If either party does not respond within the specified time limits, the other party may proceed to the next step. Any matter not appealed within the specified or mutually extended time limits shall be considered untimely.

♦ If the employee or the Union fails to process the grievance at any step within the time limits, the grievance shall be deemed to have been untimely. If the Employer's designated representative fails to answer a grievance within the specified time limits, the Union shall have the right to appeal the grievance to the next step of the grievance procedure.

## SECTION 10. - DISCIPLINE AND DISCHARGE

A.   The Employer shall have the right to discipline, suspend, or discharge any employee for just cause in accordance with the Employer's reasonable house rules and employee handbook. In accordance with Section 2 of this Agreement, the Employer shall publish a set of reasonable house rules and employee handbook.

B.   No verbal counseling session shall be deemed to constitute discipline under this Section and no such counseling shall be a grievance matter. A "verbal warning" shall be accompanied by a

EXHIBIT ___A___ PAGE _20_

written notification, placed in the employee's personnel file, as part of the progressive disciplinary procedure.

C.   Warning notices shall remain in an employee's record (file) for twelve (12) months from the date of issuance, except eighteen (18) months in cases of notices concerning incidents involving patient abuse or patient neglect. However, warning notices after twelve (12) or eighteen (18) months shall not be used in future progressive discipline actions.

D.   The Employer recognizes the concept of progressive discipline and will endeavor to utilize a progressive discipline response in cases of poor work performance and violation of house rules; however, the nature and severity of an offense will permit imposition of disciplinary action at any level of discipline. In the event of a conflict, this Agreement will take precedence over house rules.

E.   The Employer shall furnish a copy of the warning notice to the employee and Shop Steward, if the employee requests the Steward or designee's presence at the disciplinary meeting. The employee shall indicate on the face of any warning notice received an acknowledgement by their signature that they have received such copy; however, in so signing, no implication of admission to facts of the offense or guilt may be drawn. The Employer will furnish copies of notices regarding suspensions or terminations to the Union.

F.   The Employer shall provide employee warning notices either in private or to the employee in a sealed envelope. Should an employee specifically so request, that employee may have a Shop Steward present during any disciplinary action.

G.   The Employer will effect disciplinary action no later than five (5) workdays from the date of discovery of an offense and investigation of such an offense, unless the Administrator has

EXHIBIT ___A___, PAGE _21_

12

requested an extension of time, in writing, in order to complete the investigation, such extension not to exceed five (5) workdays.

H.  No employee shall be disciplined or discharged or have his/her working conditions changed in retaliation for any action taken on behalf of their patients, including, but not limited to the reporting of violation of OBRA regulations, violations of residents' rights, DHS violations, violations of disability rights laws (as concerns residents), complaints about patient abuse or complaints about any other irregularities affecting the care of residents.

## SECTION 11. - HIRING, PROBATION, POSTING VACANCIES

A.  The Employer may hire employees from any source, but the Union shall be notified of vacancies in departments under its representation for the purpose of referring union applicants to the Employer.

B.  A probationary period of ninety (90) calendar days from date of first hiring shall be established for new employees. During such probationary period, the employee may be discharged for any reason, as determined by management, without recourse to the grievance procedure. In the event an employee's employment exceeds the ninety (90) day period, such employee becomes a regular employee and his/her qualifying date, for the purpose of eligibility for pay raises or other benefits, becomes the original date of hire. The probationary period may be extended by mutual written agreement between the Union, the Employer and the employee for a period not to exceed 30 days. The Employer shall notify the employee and the Union of the employee's status prior to 90 days of employment.

C.  Seniority shall not accrue to employees during their probationary period. During their probationary period, employees shall not be entitled to fringe benefits. However, upon successful completion

EXHIBIT __A__, PAGE __22__

13

of the probationary period, the employee's seniority shall revert back to their date of hire for benefit purposes.

D.  Whenever a vacancy occurs in any department, preference shall be given to current employees who wish to apply. (See also: Section 14.B). If no current employee being considered is qualified for the position, then the Employer may fill such position from any source available.

E.  Job vacancies shall be posted for four (4) days within the facility.

## SECTION 12. - NO DISCRIMINATION

A.  Neither the Employer nor the Union shall discriminate for or against any employee or applicant covered by this Agreement on account of race, color, religious creed, age, sex, sexual orientation, national origin, disability, martial status or pregnancy.

B.  No employee shall be discriminated against because of membership in the Union or the exercise of any rights outlined in this Agreement or activities on behalf of the Union; and the Union agrees that the employees covered hereby shall be admitted to membership without discrimination.

C.  There shall be no distinction between the wages paid to men and the wages paid to women for the performance of comparable quality and quantity of work on the same or similar jobs.

## SECTION 13. - CATEGORIES OF EMPLOYEES

A.  A full-time employee is one who is regularly scheduled to work thirty (30) hours or more per week. Regular full-time employees are entitled to all benefits as provided for in this Agreement.

B.  A regular part-time employee is one who is regularly scheduled to work twenty (20) or more but less than thirty (30) hours per week. Regular part-time employees shall receive a differential in

EXHIBIT ___A___, PAGE _23_

14

lieu of benefits of $1.00 (one dollar) per hour for all hours worked, excluding Creekside.

(Notwithstanding the above, Driftwood Manor employees hired prior to June 10, 1987 who are currently, or in the future, become, regular part-time employees, shall receive pro-rated benefits (sick leave, vacation, holidays) and shall be eligible for health and dental benefits; Excell Care employees who are, as of October 1, 1995, classified as regular part-time employees will continue to receive pro-rated benefits for as long as they remain classified as regular part-time.)

C.  A casual employee is one who has no regular schedule of hours of work, but works intermittently as required. Casual employees shall receive a differential, in lieu of benefits, of twenty-five cents ($0.25) per hour for all hours worked.

D.  A temporary employee is an employee who is hired, either part time or full time, on a predetermined work schedule for a limited period which shall not exceed ninety (90) days. In the event that a temporary employee's employment extends beyond ninety (90) days, such employee becomes a regular employee and his/her qualifying date, for purposes of eligibility for pay raises, vacation and sick leave, starts with his/her date of temporary employment.

E.  Effective February 17, 2000, Regular full-time employees who are eligible for contractual fringe benefits may elect to receive a differential of $1.00 (one dollar) per hour in lieu of receiving paid-time-off benefits (paid vacation, paid holidays, paid sick leave, paid jury duty, and paid bereavement leave). Paid-time-off benefits accrued as of the time an employee elects this option will remain frozen until such a time as the employee elects to return to full benefited status, or the termination of employment, in which case the employee will be paid for all accrued vacation. The option to receive the differential or to return to full benefited

EXHIBIT ___A___, PAGE 24

status may be exercised once a year on the employee's anniversary date.

## SECTION 14. - SENIORITY

A. In matters of layoffs, recall from layoff, reduction of hours, restoration of hours, choices of shifts and transfer within the facility, the principle of facility seniority within the classification shall prevail.

B. When a vacancy occurs in any department, it shall be posted on the employee bulletin board for a period of four (4) days. In filling such vacancy, seniority shall govern, provided merit and ability are comparable in the key job duties.

C. It is understood that none of the provisions of this Section or its application shall entail a bumping procedure. (Layoffs shall be evaluated on a departmental basis and not by shift. The least senior employees in a department are laid off first and replaced with the remaining more senior employees).

D. A regular employee's seniority is defined as his/her most recent period of continuous service with the Employer.

E. Whenever layoff becomes necessary, such layoff shall become effective in the following order:

1. Probationary employees shall be laid off first, without regard to their individual periods of employment.

2. Temporary employees and casual employees will be considered as one group, and shall be laid off next in the order of their classification seniority, the least senior laid off first.

3. Non-probationary, full-time employees and part-time employees will be considered as one group and shall be laid off next in the order of their classification seniority, the least senior laid off first.

EXHIBIT __A__ , PAGE __25__

F.  Whenever a vacancy occurs in a job classification, employees within that same classification who are on layoff will be recalled in reverse order of their layoff until the desired number of employees are recalled.

G.  It shall be the responsibility of the employee to keep the Employer informed of his/her current address and to notify the Employer at once, in writing, of any change of address.

H.  In the event an employee is offered another job by the Employer outside the bargaining unit and the employee accepts such job and leaves the bargaining unit, such employee will have, along with management, each exclusively, sixty (60) calendar days, within which to decide whether the employee will stay in the new job outside the bargaining unit or return to the bargaining unit job they were promoted from, and thereafter, if the employee remains in the job outside the bargaining unit, then the employee shall lose all his/her seniority rights under this Agreement.

I.  An employee shall accrue seniority while he/she is on an approved leave of absence or layoff, but shall not accrue benefits.

J.  An employee's seniority shall be lost in the following instances:

1.  When an employee voluntarily resigns.

2.  When an employee is discharged for cause.

3.  Failure to report for work after a layoff within five (5) workdays after receipt of certified notice of recall sent by the Employer to the employee at his/her last address of record on file with the Employer.

4.  Failure to report to work at the expiration of a leave of absence pursuant to Section 24 of this Agreement; however, mitigating circumstances regarding emergencies will be considered.

EXHIBIT _A_, PAGE _26_

17

5. Accepting employment (without prior knowledge by the Employer) elsewhere while on a leave of absence; provided, however, this shall not apply to employees who have notified the employer of a "second job."

6. Continuous layoff for a period equivalent to length of continuous service with the Employer, or twelve (12) months, whichever is the lesser.

An employee whose seniority is lost for any of the reasons outlined above shall be considered as a new employee if he/she is again employed by the Employer.

K. The rule of seniority shall apply for preference in vacation periods and additional unscheduled work. However, application of seniority shall not act to cancel or otherwise affect employee requests, which have already been granted or approved.

## SECTION 15. – JOB DESCRIPTIONS

Job descriptions setting forth job duties and expectations for the covered classifications shall be distributed to the affected employees and made available to the Union upon request.

## SECTION 16. – STAFFING AND WORKLOAD DISTRIBUTION

A. The Employer will distribute the workload equitably among employees.

B. The Employer's intention is that there shall always be sufficient staff at the facility so that employee workloads are reasonable, consistent with resident/patient needs and acuity and employee health and safety. Every effort will be made to replace all staff who are counted in meeting sufficient staffing levels to meet resident needs.

EXHIBIT ___A___ PAGE 27

C.    The Employer recognizes a division of labor between housekeeping, dietary, laundry, nursing and other departments.

D.    Based on census and acuity, it is the intention of the Employer to replace a scheduled employee who is absent for any reason, by calling employees who have volunteered for additional work or overtime.

E.    The parties agree that adequate staffing is a necessary requirement for quality resident care. To that end, the facility agrees to work cooperatively with the employees to maintain appropriate staffing levels.

F.    It is the Employer's intention to comply with Federal and State law at all times.

G.    A worker shall have the right to refuse to perform work under conditions that pose an imminent danger to their health and safety or the health and safety of others. In the event of a dispute over what constitutes "imminent danger," the union steward will immediately meet with the employee and the supervisor to resolve the situation in a constructive manner. Any further dispute shall be subject to the Grievance and Arbitration procedure set forth in this Agreement.

## SECTION 17. - HOURS OF WORK

A.    The straight-time workday shall consist of no more than eight (8) hours, exclusive of a half-hour unpaid meal period. The straight-time workweek shall consist of no more than forty (40) hours within a seven (7) day workweek (12:01 am. Thursday through 12:00 midnight Wednesday).

B.    All work performed in excess of eight (8) hours in a day or forty (40) hours in a workweek, or on the sixth (6) consecutive day in a workweek shall be compensated at a minimum rate of one-and one-half (1-1/2) times the employee's straight-time hourly wage rate.

EXHIBIT ___A___ ,PAGE 2 8

C.  All work performed in excess of twelve (12) hours in a day, or on the seventh (7th) consecutive day in the workweek shall be compensated at a minimum rate of twice (double time) the employee's straight-time hourly wage rate.

D.  No employee shall be required to work overtime or additional hours in excess of their normal schedule. At the same time schedules are posted, the Employer shall post an overtime/additional hours availability sheet. Employees willing to work overtime or additional hours shall sign the availability sheet. Overtime and/or additional hours shall be offered, by seniority, to those employees who have signed the availability sheet in the following order:

   1.  Employees for whom the additional hours would be paid at straight time.

   2.  Employees for whom the additional hours would be paid at time-and-a-half.

   3.  Employees for whom the additional hours would be paid at double time.

E.  Nothing in this Section shall permit pyramiding or duplication of premium payments.

F.  Employee work schedules shall be conspicuously posted at least two (2) weeks prior to the first workday on the schedule. Changes to posted schedules may only be made by mutual agreement of the supervisor and the employee, except in case of emergency (defined as medical emergency or unsafe resident situation.)

G.  In the event the Employer contemplates a change in the scheduling system in effect in a facility or a department, it will notify the Union prior to making a final decision in order to afford the Union the opportunity to discuss the situation, explore alternatives and make recommendations.

EXHIBIT _A_ , PAGE _29_

H.  It is the intent of the Employer to employ all employees on a regular full-time basis in light of the available work. The Employer will employ part-time employees only in order to supplement its full-time workforce.

I.  Employees are entitled to take a fifteen (15) minute rest period during each half shift. The Employer will be responsible for scheduling the rest period as close to the middle of the half shift as possible and will ensure that each employee is given the opportunity to take rest periods.

Rest and meal periods may not be interrupted by the Employer, except in case of emergency (defined as medical emergency or unsafe resident situations that cannot be handled by the staff on duty).

J.  Any employee reporting for work as scheduled or requested shall be guaranteed four (4) hours of work or four (4) hours of pay. If said employee reports to work and works longer than four (4) hours, he/she shall be guaranteed eight (8) hours of work or pay, unless the shift is for less than eight (8) hours, in which case the employee shall be guaranteed work or pay for the duration of the shift. Each employee shall inform the Employer of any change in his/her current address and telephone number.

K.  Eight (8) hours of work performed within a spread of more than nine (9) hours shall be considered a split shift and shall be compensated by the payment of an additional one (1) hour's pay at the employee's regular rate of pay.

There shall be no new split shifts instituted during the term of this Agreement.

## SECTION 18. - WAGES

A.  Appendix "A," which sets forth the job classifications, straight-time hourly wage rates, effective dates and other provisions is incorporated herein as if set forth in full.

EXHIBIT ___A___ PAGE ___30___

B.  Pay periods shall consist of fourteen (14) consecutive days (two (2) workweeks), Thursday through Wednesday. Paydays shall be every other Wednesday.

C.  Paychecks will be distributed by noon on payday to the working day shift. Employees working the night shift will receive their paycheck at the end of their shift on payday. Employees working p.m. shift will receive their paycheck at the end of their shift the day before payday. Employees scheduled off on payday may pick up their checks starting at 9:00 a.m. on payday.

D.  Errors in pay checks of forty-five dollars ($45.00) or more will be corrected within three (3) working days. Errors of less than forty-five dollars ($45.00) will be corrected on the employee's next paycheck.

E.  Dietary employees shall be entitled to meals, served during their regular shift, in addition to their regular wages set forth in Appendix "A," provided that there shall be no interruption of work schedules.

F.  A shift differential of twenty-five cents ($.25) per hour shall be granted all employees for all hours worked after 3:00 p.m. on the second or third shift.

The Employer also agrees to "grandfather" any employees who were receiving shift differentials prior to April 1, 1998, and such employees will continue to receive said shift differential for all hours after 3:00 p.m.

G.  Employees assigned to relieve in a higher paying classification shall be paid at the first tenure step of the higher classification that is at least twenty-five cents ($.25) per hour higher than the employee's regular straight-time hourly wage rate for all hours worked, provided that in no instance shall an employee be paid at a tenure step higher than his/her own when relieving in a higher classification.

EXHIBIT ___A___ PAGE 31

22

H.    Employees promoted to a higher paying classification shall be placed at the first tenure step of the new classification that provides for an increase of at least twenty-five cents ($.25) per hour.

I.    No employee shall suffer any wage reduction or loss of benefits as a result of the signing of this Agreement or the implementation of any of its provisions.

J.    New employees with one (1) or more years of verifiable long-term care experience may be hired at the six (6) month, one (1) year, or two (2) year step for their classification, commensurate with their experience and qualifications. However, once a new employee is placed at the two (2) year step, he/she shall receive no further wage increase until such time as the two (2) year step wage rate for his/her classification exceeds the employee's actual wage rate. This policy shall be administered in a consistent manner and may be reviewed by the Regional Labor-Management Committee.

## SECTION 19. - PAID VACATIONS

A.    Regular full-time employees are entitled to paid vacation each year as follows, beginning with anniversary dates on or after October 1, 1995.

After one (1) year of continuous employment and annually thereafter, two (2) weeks (ten (10) working days) of paid vacation a year.

After five (5) years of continuous employment and annually thereafter, three (3) weeks (fifteen (15) working days) of paid vacation a year.

After eight (8) years of continuous employment and annually thereafter four (4) weeks (twenty (20) working days) of paid vacation a year.

EXHIBIT ___A___, PAGE ___32___

23

After fifteen (15) years of continuous employment and annually thereafter, five (5) weeks (twenty-five (25) working days) of paid vacation a year.

B.    No employee shall be deemed to have earned vacation pay, prorated or otherwise, unless they have completed one (1) year of service marked by their anniversary date. Any regular employee who voluntarily resigns after one (1) year of service shall be entitled to vacation pay prorated on the basis of actual months of service, but the facility will require at least two (2) weeks' notice of the intention of the employee to quit as a condition of this proration of vacation. The two-week notice requirement will be waived upon approval of the Administrator if good cause is shown for inability to give notice.

C.    Vacation pay earned as of an employee's anniversary date will be paid to that employee by way of a separate check on the payday immediately following the anniversary date. However, an employee may exercise the option to be paid vacation pay at a later date by submitting a written request to the Administrator at least forty-five (45) days prior to their anniversary date.

D.    Vacation pay shall be the regular straight-time hourly rate of pay which the employee would have received had he/she worked.

E.    Employee requests for vacation shall be submitted, in writing, at least one (1) month prior to the commencement of such vacation. The Employer will respond, in writing, within two (2) weeks, either granting or denying said vacation request.

F.    In cases where there is a conflict in vacation request submitted by two (2) or more employees of the same classification and shift, preference shall be given to the employee with the greater seniority.

EXHIBIT ___A___, PAGE 33

## SECTION 20. - PAID HOLIDAYS

A.  The following are paid holidays for regular full-time employees who have completed the ninety (90) day probationary period as of the date of the holiday:

New Year's Day

Dr. Martin Luther King, Jr. Day

Presidents' Day

Memorial Day

Independence Day

Labor Day

Thanksgiving Day

Christmas Day

Employee's Birthday*

Floating Holiday*

Second Floating Holiday**

*To be eligible, an employee must have completed one (1) year of employment.

**Fremont facility employees with two (2) or more years of service only, excluding Creekside.

B.  When an employee works on a holiday, he/she shall be paid for working on the holiday and, in addition will receive another day off, with pay, at the straight-time rate of pay or, at the employee's option, another day's pay in lieu thereof.

C.  To be eligible for Thanksgiving, Christmas, New Year's, Independence Day or Labor Day holiday pay, an employee must work the holiday, if scheduled, and must work all scheduled days in the workweek in which the holiday falls, unless excused by the Administrator. To be eligible for holiday pay on all other holidays, an employee must work the holiday if scheduled, his/her last scheduled day preceding and first scheduled day following a holiday, unless excused by the Administrator.

D.  If a holiday occurs during an employee's vacation, the holiday pay shall be added to the vacation.

EXHIBIT _A_, PAGE _34_

25

E.    Holiday scheduling conflicts among employees shall be resolved by seniority. However, the facility will use its best efforts to grant each employee one of the following paid holidays off each holiday season: Thanksgiving Day, Christmas Day, New Year's Day.

F.    In order to be scheduled off for the Employee's Birthday or Float Holiday, an eligible employee must notify the Employer at least two (2) weeks prior to the posting of the work schedule in which the holiday falls.

## SECTION 21. – PAID SICK LEAVE

A.    Regular full-time employees shall accrue one (1) day of paid sick leave per month of employment, excluding Creekside.

B.    Paid sick leave will accrue to a maximum of forty-eight (48) days.

C.    Paid sick leave will accrue from date of hire, but may not be used in the first ninety (90) days of employment.

D.    Sick Leave shall be effective and payable on the first day of absence for employees who are hospitalized or who have completed one (1) year of service and maintain a sick leave bank of six (6) days or more as of the date of absence. Sick leave shall be effective and payable on the second day of absence for employees who have not completed one (1) year of service and for any employees who maintain a sick leave bank of less than six (6) days as of the date of absence.

E.    Paid sick leave shall be integrated with State Disability or Workers' Compensation benefits so that the total will not exceed the employee's regular rate of pay.

F.    Paid sick leave is to be paid only for scheduled workdays an employee is unable to work due to bona fide illness to a maximum of five (5) days per workweek.

EXHIBIT ___A___ PAGE _35_

G.  If a reasonable doubt exists, the Employer may require a doctor's certificate as a condition of paying sick leave. In these cases, the Employer will institute only reasonable policies.

H.  For each calendar month in which a regular employee works all his/her scheduled hours, he/she shall be paid a bonus of twenty-five dollars ($25.00), to be paid prior to the end of the following month.

I.  Employees who are unable to report to work for any reason must notify the Employer of same at least one (1) hour prior to the employee's regular starting time. Failure to notify management of inability to report for work will disqualify an employee from paid sick leave benefits.

## SECTION 22. - HEALTH, DENTAL AND VISION

A.  Health Plan:
The Employer shall contribute toward eligible full-time employees' health coverage under a Kaiser plan that provides a five-dollar ($5.00) co-pay for doctor visits and a five-dollar ($5.00) co-pay for prescriptions with durable medical equipment, such Kaiser plan to be a five-tier plan, with the following employee contribution levels:

| Employee Only Coverage: | Employee monthly cost effective January 1, 2002 |
|---|---|
| 0-2 years service: | $44.63 |
| 2-5 years service: | $35.70 |
| 5 + years service: | $17.85 |

Effective with each health insurance renewal (12 months after implementation in 1998), there shall be charged to employees no more than a 10% increase in the above and below rates. Should Kaiser increase premiums to its largest "buyer" less than 10% (CALPERS), then that percentage increase shall be applied to the above and below rates.

EXHIBIT __A__, PAGE 36

## Dependent Coverage:

No Employer contribution. Employees are guaranteed the prices shown below to buy each level of dependent care, with the same 10% or less increase applied as described above in the 2nd and 3rd 12 –month health insurance renewals:

| | |
|---|---|
| One Child: | Employee pays $76.85 for coverage |
| Spouse: | Employee pays $241.30 for coverage |
| Two or more children: | Employee pays $153.71 for coverage |
| Family: | Employee pays $384.28 for coverage |

Coverage will be maintained with Pacific Care for those facilities where it is offered, with 25%, 20% and 10% rates. Coverage for grandfathered employees from previous agreements (Fruitvale and Driftwood Manor) shall remain unchanged.

For employees with three (3) months but less than two (2) years of service, the Employer will pay seventy-five percent (75%) of the monthly premium, with the employee paying the remaining twenty-five percent (25%) through payroll deduction.

For employees with two (2) or more but less than five (5) years of service, the Employer will pay eighty percent (80%) of the monthly premium, with the employee paying the remaining twenty percent (20%) through payroll deduction.

For employees with five (5) or more years of service, the Employer will pay ninety percent (90%) of the monthly premium, with the employee paying the remaining ten percent (10%) through payroll deduction.

Employees desiring to enroll eligible dependents in the health plan may do so at their own expense through payroll deduction.

New employees will be advised by the Employer of the availability of health insurance during their probationary period. Those electing coverage will be covered as of the first day of the

28

EXHIBIT __A__, PAGE 37

month immediately following completion of ninety (90) calendar days of employment. Those employees declining coverage will be required to sign a waiver indicating that enrollment in the plan was offered by the Employer and declined by the employee.

B.  Dental Plan

The Employer shall pay ninety percent (90%) of the monthly premium, with the employee paying the remaining ten percent (10%) through payroll deduction, toward eligible full-time employees' dental coverage under the current Delta Dental plan (Diagnostic and Preventive 80/20; Basic 80/20; Crowns & Casts 80/20; Prosthodontic 50/50, with 12 month wait; $50.00 initial deductible; maximum yearly benefit $750.00).

Effective June 1, 1996, coverage will be under Delta Dental Plan XVIII (Diagnostic and Preventive 100%; other Basic 85/15; sealants to age 14 - 85/15; Crowns and Cast Restorations 80/20; Prosthodontic 80/20, with no wait; calendar year deductible of twenty-five dollars ($25) per patient, seventy-five dollars ($75) per family; maximum yearly benefit $1,000).

Employees at Excell HealthCare Center who currently have one hundred percent (100%) of their monthly dental plan premium paid by the Employer will continue to do so.

Employees desiring to enroll eligible dependents in the dental plan may do so at their own expense through payroll deduction.

New employees will be advised by the Employer of the availability of dental insurance during their probationary period. Those electing coverage will be covered as of the first day of the month immediately following completion of ninety (90) calendar days of employment. Those employees declining coverage will be required to sign a waiver indicating that enrollment in the plan was offered by the Employer and declined by the employee.

EXHIBIT ___A___, PAGE __38__

# SECTION 23. - SEIU NATIONAL INDUSTRY PENSION PLAN

Effective January 1, 1996, the Employer agrees to become and remain a participating Employer in the Service Employees International Union National Industry Pension Plan for all eligible employees in the bargaining unit with one (1) or more years of service with the employer, excluding Creekside.

Subsection 1.    Coverage
The employer agrees to make periodic contributions on behalf of all employees covered by this Collective Bargaining Agreement to the Service Employees International Union National Industry Pension Fund (hereinafter, "Fund") in the amounts specified in Section 3 below.

Subsection 2.    Term
The Employer agrees to become and remain a participating employer in the Fund throughout the term of this Collective Bargaining Agreement, including any extension thereof.

Subsection 3.    Contributions
1.    Effective **January 1, 1996**, the Employer shall contribute to the Fund in the amount of **$0.10 (ten cents) per hour** for all employees covered by the Collective Bargaining Agreement at **Almaden, Driftwood Manor, Excell, Fremont, Hayward Hills, Parkview and Skyline** who have completed one (1) year of service with the Employer.

2.    Effective **January 1, 1997**, the Employer shall contribute to the Fund in the amount of **$0.20 (twenty cents) per hour** for all employees covered by the Collective Bargaining Agreement at **Almaden, Driftwood Manor, Excell, Fremont, Fruitvale, Hayward Hills, Parkview and Skyline** who have completed one (1) year of service with the Employer.

3.    Effective **February 1, 1997**, the Employer shall contribute to the Fund in the amount of **$0.20 (twenty cents) per hour** for all

EXHIBIT __A__, PAGE 39

employees covered by the Collective Bargaining Agreement at **Diamond Ridge and Vale** who have completed one (1) year of service with the Employer.

4.    Effective <u>January 1, 1998</u>, the Employer shall contribute to the Fund in the amount of <u>$0.20 (twenty cents) per hour</u> for all employees covered by the Collective Bargaining Agreement at **Florin** who have completed one (1) year of service with the Employer.

5.    Effective <u>January 1, 2000</u>, the Employer shall contribute to the Fund in the amount of <u>$0.30 (thirty cents) per hour</u> for **all employees** covered by the Collective Bargaining Agreement who have completed one (1) year of service with the Employer, excluding Creekside Health Care Center.

6.    Contributions required by this provision shall be paid to the Fund on or before the fifteenth day of the month following the period for which contributions are due or on or before such other date as the Trustees may hereafter determine.

7.    Contributions shall be transmitted together with a remittance report containing such information, in such manner, and on such form as may be required by the Trustees of the Fund or their designee.

<u>Subsection 4.    Trust Agreement</u>.
The Employer hereby agrees to be bound by the provisions of the Agreement and Declaration of Trust establishing the Fund, as it may from time to time be amended, and by all resolutions and rules adopted by the Trustees pursuant to the powers delegated to them by that Agreement, including collection policies, receipt of which is hereby acknowledged. The Employer hereby designates the Employer members of the Fund's Board of Trustees, or their duly selected successor(s), as its representatives on the Board.

<u>Subsection 5.    Cooperation</u>

EXHIBIT ___A___, PAGE ___40___

The Employer and Union agree to cooperate with the Trustees of the Fund in distributing Plan booklets, literature and other documents supplied by the Fund Administrator and in obtaining and providing such census and other data as may be required by the Fund's Administrator or Trustees to enable them to comply with the applicable provisions of the Employee Retirement Income Security Act (ERISA).

<u>Subsection 6.    Approval By Trustees</u>
The undersigned parties acknowledge that the provisions of this Appendix and the participation of the employees covered by it are subject to approval by the Trustees of the Fund and that the Trustees reserve the right to terminate, at their sole and unreviewable discretion, the participation of the employees covered by this Agreement and to establish the level(s) of benefits to be provided. Termination may be directed by the Trustees for reasons including, but not limited to, failure of the Employer to make timely contributions and expiration of the Collective Bargaining Agreement. The parties further acknowledge that the Trustees' acceptance for participation in the Fund of the employees covered by the Collective Bargaining Agreement is limited only to the categories of employees covered by the Collective Bargaining Agreement at the time application for acceptance occurs and the admission of other categories of employees to participate in the Fund will require specific acceptance by the Trustees.

<u>Subsection 7.    Miscellaneous</u>
In the event of any inconsistency between this Section and any other provision of the Collective Bargaining Agreement, the terms of this Section shall prevail.

## SECTION 24. - LEAVES OF ABSENCE

A.    After one (1) year of continuous employment, a regular full-time or part-time employee may request, in writing, a leave of absence of up to sixty (60) days. An extension beyond the allowed leave of absence may be granted at the discretion of the Administrator when good cause is shown. In cases where the leave of absence has been approved by the Administrator, said approval shall be

EXHIBIT ___A___, PAGE _41_

32

in writing, setting forth the dates of such leave. In cases where the leave of absence is denied, reasons for such denial shall be in writing.

B.  Regular employees with six (6) months or more of continuous employment shall be granted a leave of absence, without pay, for up to six (6) months for disabilities, upon presentation of medical certification. Regular employees with less than six (6) months of service shall be granted one-hundred and twenty (120) days' leave of absence in cases of physical disability due to pregnancy upon presentation of medical certification. In cases of disabilities occurring on the job, a leave of absence of up to twelve (12) months shall be given. An extension beyond the allowed leave of absence may be granted at the discretion of the Administrator. Such extensions shall not be unreasonably denied.

C.  There shall be no entitlement to pay or other benefits, unless otherwise specifically provided for, during any period of a leave of absence (including personal, on-the-job or off-the-job medical leaves.) Employees on a leave of absence for over thirty (30) calendar days shall have sick leave pay and vacation pay pro-rated on their next anniversary date. The anniversary date and seniority date of an employee on a leave of absence shall not be adjusted. Changes in benefit accrual begin when an employee is no longer drawing sick leave pay or vacation pay.

D.  The Employer will continue to provide health and dental insurance coverage for the first full month for any employee on a leave of absence due to personal reasons or as a result of injury or illness which occurs on or away from the job. In those cases where such leaves of absence exceed thirty (30) days, the employee will thereafter be individually responsible for the full premium payment of said health and dental insurance coverage, should that employee desire to have such coverage continued.

E.  The Employer agrees to abide by the provisions of the State and Federal Family and Medical Leave Act(s).

EXHIBIT ___A___, PAGE __42__

33

F.   Upon completion of the authorized leave of absence, an employee shall be placed in his/her same classification and shift. In those instances where an employee who has been on a medical leave of absence attempts to return from such leave of absence prior to the time such leave of absence is to expire, the employee shall be returned to his/her former classification and shift, provided such employee has given at least two (2) weeks' notice of intent to return. In other instances, the Employer shall be under no obligation to return an individual to his/her classification and shift until such time as the leave of absence termination date occurs. Employees returning to their former classification and shift upon the termination of their leave of absence will receive the then prevailing rate of pay, including any differential which previously existed which had not been rescinded for the job they are performing.

## SECTION 25. - BEREAVEMENT LEAVE

A.   When a death occurs in the immediate family of a regular employee, he/she shall be entitled to three (3) workdays' bereavement leave with pay. Immediate family is defined as spouse, sister, brother, mother, father, son, daughter, mother-in-law, father-in-law, legal guardian, legal ward, grandmother, grandfather, grandchild, or cohabitant.

B.   Should an employee desire to attend a funeral of an immediate family member taking place in excess of 300 miles from the facility, he/she will be granted an additional two (2) workdays' excused absence, paid from accrued sick leave.

## SECTION 26. PAID JURY DUTY

If an employee with six (6) months or more of service is called upon for jury duty service, said employee will be compensated at their normal daily wage for regularly scheduled days so spent, less any sum received for service as a juror, up to a maximum of two (2) weeks, provided that the employee:

EXHIBIT ___A___, PAGE 43

1. notifies the Executive Director immediately upon notification that he/she will be required to perform jury duty service;

2. presents proof of service requiring the employee's attendance;

3. Deposits with the Employer the full amount of compensation received.

## SECTION 27. - EDUCATIONAL LEAVE

A. Regular LVNs covered by this Agreement with one (1) year or more of continuous service shall be entitled to sixteen (16) hours of paid education leave per year. An employee requesting leave under this Section must show proof of attendance at a class or seminar.

B. The Employer recognizes the value of supplemental education for purposes of upgrading employees' skills. It is agreed that, upon mutual agreement between the Administrator and the employee, regular employees with one (1) year or more of continuous service may be entitled to an unpaid leave of absence for purposes of educational upgrading or an agreed upon reduction in hours for the same purpose.

## SECTION 28. - TRAINING AND IN-SERVICE

A. When in-service educational programs are provided for employees covered under this Agreement, the employer will use its best efforts to ensure that the program sessions are available to all employees on all shifts at the facility. Such training sessions are to be scheduled, if possible, during an employee's scheduled work time. No employee will be penalized for not attending any session during his/her regular time off, provided that it is made up at a future date. The attendance at such in-service training, either at a regularly scheduled session or by way of make-up participation, shall be a mandatory condition of employment. Off-duty employees will be paid at their regular rate of pay, with overtime paid, if applicable, for time spent in attendance at such

EXHIBIT _A_ , PAGE _44_

in-service sessions. The Employer will continue its facility practices concerning in-service program availability.

B.  The Employer shall assure that all employees are fully trained to perform the skills required for quality resident care and are trained and regularly kept current on resident rights, DHS regulations, safety and health matters, and other issues in the interest of nursing home residents.

C.  The Employer will offer adequate training to current employees to ensure their placement in new or redesigned job classifications and positions, if qualified after completion of training, now and in the future. In the event of possible displacement from current schedule or positions, this training will apply to any available vacancy at any of the Employer's facilities that are covered by this Agreement.

D.  The Employer recognizes that back injuries can be serious in a long-term care facility. The Employer agrees to continue a strong ergonomics program to protect nursing home workers from stresses that cause back injuries. This program will include, but is not limited to, a written ergonomics program, worksite analysis, hazard prevention and administration controls, a medical management program for worker injuries and training and education.

E.  The Employer shall maintain the strongest feasible program to protect workers and residents from infections and communicable diseases. The Employer further agrees to supply training, protective equipment and vaccines, including hepatitis B vaccine to workers who are at risk of exposure to infectious diseases. The Employer will comply with all OSHA regulations and Public Health Service recommendations concerning infections and bloodborne diseases.

EXHIBIT ___A___ PAGE __45__

## SECTION 29. – LIMITED LIGHT DUTY WORK

An employee who has suffered a temporarily disabling on-the-job injury may be placed on modified/light duty, if a physician indicates that the employee can handle and will benefit from modified work and the physician indicates that the employee will be released to resume full duties within sixty (60) days. Temporarily disabled employees working under limited/light duty restriction will be paid at the rate of one hundred percent (100%) of the employee's current straight-time rate of pay for such hours worked or the minimum required by the state, whichever is greater. No employee shall be required to perform tasks which are contrary to his/her medical restrictions.

## SECTION 30. – NOTICE OF TRANSFER

In the event of a sale, transfer, lease, assignment or other disposition of a facility covered by this Agreement, in whatever manner or form, the Employer will give the Union and the affected employees sixty (60) days' advance written notice.

Said notice shall include the name, address, telephone number and labor relations contact of the prospective new employer/operator/owner.

Upon demand by the Union, the parties will promptly enter into negotiations over the effects of the transaction on the affected employees.

## SECTION 31. – SUCCESSORSHIP AND JOB SECURITY

Mariner Post-Acute Network agrees that, in the event that it decides to sell, transfer or otherwise divest itself of any facility covered by this Agreement, Mariner Post-Acute Network shall require, as a condition of sale or transfer, that the successor operator recognize the Union as the exclusive collective bargaining agent for employees at the facility. Mariner Post-Acute Network further agrees that it will work closely with the Union, in cases of sales, to assist with the transition.

37

EXHIBIT __A__, PAGE __46__

## SECTION 35. - TERM OF AGREEMENT

This Agreement shall be effective as of November 30, 2004, and shall remain in full force and effect, unless amended by mutual written agreement of the parties, through June 15, 2005, and from year to year thereafter provided, however, that either party may serve written notice on the other at least ninety (90) days prior to June 15, 2005, or subsequent June 15 anniversary date, of its desire to amend any provisions hereof.

Notwithstanding the above, the parties agree that either party may make a written request to reopen the Agreement for negotiations over wages, benefits and pension pursuant to the time limits (90 days) set forth in this Section prior to June 15, 2005. The parties further agree that Section 8 of the Agreement (No Strike, No Lockout) shall be waived for the purpose of resolving a dispute which arises out of this contract reopener.

**MARINER POST-ACUTE NETWORK, INC.**

**SEIU HEALTH CARE WORKERS UNION LOCAL 250, AFL-CIO**

By: _Julia Holladay for_
Todd Andrews, Region
President

By: _Sal Rosselli_
Sal Rosselli, President

Date: _12/29/04_

Date: _1/24/05_

By: _Julia Holladay_
Julia Halladay, Regional
Director, Human Resources

By: _Diane Dally_
Diane Dally, Director,
Convalescent Division

DD/lc/MC2976_exp2004.coneb
opein 3 afl-cio(12)

EXHIBIT ___A___, PAGE __47__

39

## SECTION 32. - SUB-CONTRACTING

Mariner Post-Acute Network agrees to make a reasonable effort to include new jobs and work in the existing bargaining unit and train bargaining unit members to fill these new positions.

If the prospect of contracting out any work that is the same or similar to work being performed within the represented bargaining unit is being considered by Mariner Post-Acute Network at any time, Mariner Post-Acute Network shall notify the Union before a final decision is made and the parties will meet in a timely manner to seriously consider alternatives and options that would allow the work to stay in the bargaining unit. Mariner Post-Acute Network agrees to provide adequate information on costs, liabilities, etc. to enable the Union to make informed recommendations. The parties should also consider alternatives to layoff, such as retraining, supplemental unemployment benefits and other measures, should the contracting out be deemed to be absolutely necessary.

## SECTION 33. - REGIONAL LABOR-MANAGEMENT COMMITTEE

Representatives of Mariner Post-Acute Network and the Union shall meet at the regional level on a regular basis, not less than every six (6) months, to monitor the implementation and progress of this Collective Bargaining Agreement. Mariner Post-Acute Network's delegation should include at least one representative from Operations.

## SECTION 34. - SAVINGS CLAUSE

If any provision of this Agreement or the application of such provision to any person or circumstance is ruled contrary to law by any Federal or State Court or duly authorized agency, the remainder of this Agreement or the application of such provision to other persons or circumstances shall not be affected thereby.

EXHIBIT____*A*____,PAGE__4 8__

38

# APPENDIX "A" WAGE RATES

Effective October 1, 2002, the following shall be the minimum straight-time hourly wage rates:

## ALMADEN CARE & REHABILITATION

| Classification | Start | 6 mos. | 1 yr. | 2 yrs. |
|---|---|---|---|---|
| Certified Nursing Assistant | $11.65 | 11.85 | 12.05 | 12.25 |
| Restorative Nursing Assistant | $11.95 | 12.15 | 12.35 | 12.55 |
| Nursing Assistant (Uncertified) | $9.65 | (Must be certified after 4 mos.) | | |
| Housekeeper | $9.15 | 9.40 | 9.65 | 10.15 |
| Laundry Worker | $9.15 | 9.40 | 9.65 | 10.15 |
| Maintenance Worker | $9.15 | 9.40 | 9.65 | 10.15 |
| Food Service Worker | $9.15 | 9.40 | 9.65 | 10.15 |
| Cook | $11.15 | 11.40 | 11.65 | 11.90 |

EXHIBIT _A_ PAGE _49_

40

## CREEKSIDE

Effective December 2, 2004, the following shall be the minimum straight-time hourly wage rates:

| Classification | Start | 6 Mos. | 1 Yr. | 2 Yrs. |
|---|---|---|---|---|
| Certified Nursing Assistant | $11.65 | 11.85 | 12.05 | 12.25 |
| Restorative Nursing Assistant | $11.95 | 12.15 | 12.35 | 12.55 |
| Uncertified Nursing Assistant | $9.65 | (Must be certified after 4 mos.) | | |
| LVN | $19.65 | 19.90 | 20.15 | 20.65 |
| Activity Assistant | $9.15 | 9.40 | 9.65 | 10.15 |
| Ward Clerk | $9.15 | 9.40 | 9.65 | 10.15 |
| Housekeeping | $9.15 | 9.40 | 9.65 | 10.15 |
| Janitor | $9.15 | 9.40 | 9.65 | 10.15 |
| Kitchen Aide | $9.15 | 9.40 | 9.65 | 10.15 |
| Laundry | $9.15 | 9.40 | 9.65 | 10.15 |
| Cook | $11.15 | 11.40 | 11.65 | 11.90 |

No member shall receive less than fifty ($0.50) cents.

## DIAMOND RIDGE HEALTH CARE CENTER

| Classification | Start | 6 mos. | 1 yr. | 2 yrs. |
|---|---|---|---|---|
| Certified Nursing Assistant | $11.65 | 11.85 | 12.05 | 12.25 |
| Restorative Nursing Assistant | $11.95 | 12.15 | 12.35 | 12.55 |
| Uncertified Nursing Assistant | $9.65 | (Must be certified after 4 mos.) | | |
| Housekeeping | $9.15 | 9.40 | 9.65 | 10.15 |
| Laundry | $9.15 | 9.40 | 9.65 | 10.15 |
| Janitor | $9.15 | 9.40 | 9.65 | 10.15 |
| Maintenance | $9.15 | 9.40 | 9.65 | 10.15 |
| Cook/Assistant Cook | $11.15 | 11.40 | 11.65 | 11.90 |
| Dietary | $9.15 | 9.40 | 9.65 | 10.15 |

EXHIBIT ___A___ PAGE ___50___

## DRIFTWOOD MANOR

| Classification | Start | 6 mos. | 1 yr. | 2 yrs. |
|---|---|---|---|---|
| Certified Nursing Assistant | $11.65 | 11.85 | 12.05 | 12.25 |
| Restorative Nursing Assistant | $11.95 | 12.15 | 12.35 | 12.55 |
| Physical Therapy Assistant | $11.95 | 12.15 | 12.35 | 12.55 |
| Nursing Assistant (Uncertified) | $9.65 | (Must be certified after 4 mos.) | | |
| Ward Clerk | $9.15 | 9.40 | 9.65 | 10.15 |
| Maintenance Worker | $9.15 | 9.40 | 9.65 | 10.15 |
| Housekeeper | $9.15 | 9.40 | 9.65 | 10.15 |
| Laundry Worker | $9.15 | 9.40 | 9.65 | 10.15 |
| Kitchen Helper | $9.15 | 9.40 | 9.65 | 10.15 |
| Cook | $11.15 | 11.40 | 11.65 | 11.90 |

## EXCELL CARE CENTER

| Classification | Start | 6 mos. | 1 yr. | 2 yrs. |
|---|---|---|---|---|
| Certified Nursing Assistant | $11.65 | 11.85 | 12.05 | 12.25 |
| Restorative Nursing Assistant | $11.95 | 12.15 | 12.35 | 12.55 |
| Physical Therapy Assistant | $11.95 | 12.15 | 12.35 | 12.55 |
| Uncertified Nursing Assistant | $9.65 | (Must be certified after 4 mos.) | | |
| Housekeeper | $9.15 | 9.40 | 9.65 | 10.15 |
| Laundry Worker | $9.15 | 9.40 | 9.65 | 10.15 |
| Kitchen Helper | $9.15 | 9.40 | 9.65 | 10.15 |
| Cook | $9.15 | 9.40 | 9.65 | 10.15 |
| Relief Cook | $11.15 | 11.40 | 11.65 | 11.90 |

EXHIBIT _____A____ , PAGE _51_

## FLORIN CARE CENTER

| Classification | Start | 6 mos. | 1 yr. | 2 yrs. |
|---|---|---|---|---|
| Certified Nursing Assistant | $11.65 | 11.85 | 12.05 | 12.25 |
| Restorative Nursing Assistant | $11.95 | 12.15 | 12.35 | 12.55 |
| Uncertified Nursing Assistant | $9.65 | (Must be certified after 4 mos.) | | |
| Laundry | $9.15 | 9.40 | 9.65 | 10.15 |
| Housekeeping | $9.15 | 9.40 | 9.65 | 10.15 |
| Maintenance | $9.15 | 9.40 | 9.65 | 10.15 |
| Kitchen Helper | $9.15 | 9.40 | 9.65 | 10.15 |
| Cook | $11.15 | 11.40 | 11.65 | 11.90 |

## FREMONT CARE CENTER

| Classification | Start | 6 mos. | 1 yr. | 2 yrs. |
|---|---|---|---|---|
| Certified Nursing Assistant | $11.65 | 11.85 | 12.05 | 12.25 |
| Physical Therapy Assistant | $11.95 | 12.15 | 12.35 | 12.55 |
| Restorative Nursing Assistant | $11.95 | 12.15 | 12.35 | 12.55 |
| Uncertified Nursing Assistant | $9.65 | (Must be certified after 4 mos.) | | |
| LVN | $19.65 | 19.90 | 20.15 | 20.65 |
| Housekeeper | $9.15 | 9.40 | 9.65 | 10.15 |
| Maintenance Worker | $9.15 | 9.40 | 9.65 | 10.15 |
| Laundry Worker | $9.15 | 9.40 | 9.65 | 10.15 |
| Kitchen Aide | $9.15 | 9.40 | 9.65 | 10.15 |
| Cook | $11.15 | 11.40 | 11.65 | 11.90 |

EXHIBIT A , PAGE 52

## FRUITVALE CARE CENTER

| Classification | Start | 6 mos. | 1 yr. | 2 yrs. |
|---|---|---|---|---|
| Certified Nursing Assistant | $11.65 | 11.85 | 12.05 | 12.25 |
| Restorative Nursing Assistant | $11.95 | 12.15 | 12.35 | 12.55 |
| Physical Therapy Aide | $11.95 | 12.15 | 12.35 | 12.55 |
| Uncertified Nursing Assistant | $9.65 | (Must be certified after 4 mos.) | | |
| Licensed Vocational Nurse | $19.65 | 19.90 | 20.15 | 20.65 |
| Ward Clerk | $9.15 | 9.40 | 9.65 | 10.15 |
| Cook | $9.15 | 9.40 | 9.65 | 10.15 |
| Dietary Assistant | $9.15 | 9.40 | 9.65 | 10.15 |
| Housekeeper/Laundry Worker | $9.15 | 9.40 | 9.65 | 10.15 |

## HAYWARD HILLS CONVALESCENT HOSPITAL

| Classification | Start | 6 mos. | 1 yr. | 2 yrs. |
|---|---|---|---|---|
| Certified Nursing Assistant | $11.65 | 11.85 | 12.05 | 12.25 |
| Physical Therapy Assistant | $11.95 | 12.15 | 12.35 | 12.55 |
| Restorative Nursing Assistant | $11.95 | 12.15 | 12.35 | 12.55 |
| Uncertified Nursing Assistant | $9.65 | (Must be certified after 4 mos.) | | |
| Licensed Vocational Nurse | $19.65 | 19.90 | 20.15 | 20.65 |
| Maintenance Worker | $9.15 | 9.40 | 9.65 | 10.15 |
| Janitor | $9.15 | 9.40 | 9.65 | 10.15 |
| Housekeeper | $9.15 | 9.40 | 9.65 | 10.15 |
| Laundry Worker | $9.15 | 9.40 | 9.65 | 10.15 |
| Kitchen Helper | $9.15 | 9.40 | 9.65 | 10.15 |
| Cook | $11.15 | 11.40 | 11.65 | 11.90 |
| Relief Cook | $11.15 | 11.40 | 11.65 | 11.90 |

EXHIBIT ___A___ PAGE 53

## PARKVIEW NURSING CENTER

| Classification | Start | 6 mos. | 1 yr. | 2 yrs. |
|---|---|---|---|---|
| Certified Nursing Assistant | $11.65 | 11.85 | 12.05 | 12.25 |
| Restorative Nursing Assistant | $11.95 | 12.15 | 12.35 | 12.55 |
| Nurse Assistant (Uncertified) | $9.65 | (Must be certified after 4 mos.) | | |
| LVN | $19.65 | 19.90 | 20.15 | 20.65 |
| Housekeeper | $9.15 | 9.40 | 9.65 | 10.15 |
| Janitor | $9.15 | 9.40 | 9.65 | 10.15 |
| Laundry Worker | $9.15 | 9.40 | 9.65 | 10.15 |
| Kitchen Helper | $9.15 | 9.40 | 9.65 | 10.15 |
| Cook | $11.15 | 11.40 | 11.65 | 11.90 |

## SKYLINE CONVALESCENT HOSPITAL

| Classification | Start | 6 mos. | 1 yr. | 2 yrs. |
|---|---|---|---|---|
| Certified Nursing Assistant | $11.65 | 11.85 | 12.05 | 12.25 |
| Restorative Nursing Assistant | $11.95 | 12.15 | 12.35 | 12.55 |
| Uncertified Nursing Assistant | $9.65 | (Must be certified after 4 mos.) | | |
| Maintenance Worker | $9.15 | 9.40 | 9.65 | 10.15 |
| Housekeeper | $9.15 | 9.40 | 9.65 | 10.15 |
| Laundry Worker | $9.15 | 9.40 | 9.65 | 10.15 |
| Food Service Worker | $9.15 | 9.40 | 9.65 | 10.15 |
| Cook | $11.15 | 11.40 | 11.65 | 11.90 |

EXHIBIT A ,PAGE 54

## VALE CARE CENTER

| Classification | Start | 6 Mos. | 1 Yr. | 2 Yrs. |
|---|---|---|---|---|
| Certified Nursing Assistant | $11.65 | 11.85 | 12.05 | 12.25 |
| Restorative Nursing Assistant | $11.95 | 12.15 | 12.35 | 12.55 |
| Uncertified Nursing Assistant | $9.65 | (Must be certified after 4 mos.) | | |
| LVN | $19.65 | 19.90 | 20.15 | 20.65 |
| Activity Assistant | $9.15 | 9.40 | 9.65 | 10.15 |
| Ward Clerk | $9.15 | 9.40 | 9.65 | 10.15 |
| Housekeeping | $9.15 | 9.40 | 9.65 | 10.15 |
| Janitor | $9.15 | 9.40 | 9.65 | 10.15 |
| Kitchen Aide | $9.15 | 9.40 | 9.65 | 10.15 |
| Laundry | $9.15 | 9.40 | 9.65 | 10.15 |
| Cook | $11.15 | 11.40 | 11.65 | 11.90 |

EXHIBIT _____A_____, PAGE 55

## APPENDIX "B" - PREVIOUS RECOGNITION CLAUSES

<u>Almaden Care & Rehabilitation:</u> The Employer recognizes the Union as the exclusive bargaining agent of all the employees employed in the classifications set forth in Appendices "A" and "B" of this Agreement and to any other classifications which may be established within the scope of the duties now included within these classifications. Excluded from the bargaining unit are Office and Clerical Workers, Registered and Licensed Vocational Nurses, Activity Workers, Assistant Supervisors, Supervisors and Administrative Personnel, as defined in the Labor Management Relations Act of 1947, as amended.

<u>Creekside:</u> The Employer recognizes the Union as the exclusive bargaining agent for all employees covered by this Agreement. All full-time and regular part-time certified nurses aides, non-supervisory licensed vocation nurses, housekeeping employees, kitchen/dietary employees; laundry employees, maintenance employees employed by the Employer at the San Pablo, California facility; excluding all other employees, guards and supervisors as defined in the Act.

<u>Diamond Ridge:</u> The Employer recognizes the Union as the sole and exclusive collective bargaining representative of all employees in the unit as set forth in the National Labor Relations Board ' Certification of Representative' case number 32-RC-2779, dated October 19, 1988, and agrees to bargain with the Union in accordance with applicable requirements of the law.

<u>Driftwood Manor:</u> The Employer recognizes the Union as the exclusive bargaining agent for all employees covered by this Agreement. This Agreement shall apply to employees working in the classifications listed in Appendix "A" and to any other classifications that may be established within the scope of the duties now included within these classifications. Excluded from the bargaining unit are Supervisory LVNs, Office Clerical Employees, RNs, Activity Director, one (1) assistant Activity Director, administrative personnel, guards, and supervisors, as defined in the National Labor Relations Act, as amended.

47

<u>Excell HealthCare Center:</u> The Employer recognizes the Union as the exclusive bargaining agent for all employees covered by this Agreement as set forth in the classifications listed in Appendix "A" hereof and to any other classifications which may be established within the scope of the duties now included within these classifications. Excluded from the bargaining unit are all other employees, office clerical employees, professional employees, guards and supervisors, as defined in the National Labor Relations Act, as amended.

<u>Florin Nursing Center:</u> The Employer recognizes the Union as the exclusive bargaining agent for all employees working in classifications set forth in Appendix A of this Agreement.

<u>Fremont HealthCare Center:</u> The Employer recognizes the Union as the exclusive bargaining agent for all employees covered by this Agreement.

Excluded from the foregoing recognition and bargaining unit shall be all employees in the following classifications: Registered Nurses, Volunteer Coordinators, Clericals, Guards, Watchmen, and Supervisors, as defined under the National Labor Relations Act, as amended.

<u>Fruitvale Care:</u> The Employer recognizes the Union as the exclusive bargaining agent for employees covered by this Agreement as set forth in the classifications listed in Appendix "A" hereof and to any other classifications which may be established within the scope of duties now included within these classifications. Excluded from the bargaining unit are all other employees, office clerical employees, professional employees, guards and supervisors, as defined in the National Labor Relations Act, as amended.

<u>Hayward Hills Convalescent Hospital:</u> The Employer recognizes the Union as the exclusive bargaining agent for all employees in the Housekeeping, Dietary, and Nursing Departments, including licensed vocational employees and maintenance employees, but excluding

EXHIBIT __A__, PAGE _57_

registered nurses, guards, office clerical employees and supervisors, as defined in the National Labor Relations Act, as amended.

<u>Parkview Health Care Center:</u> The Employer recognizes the Union as the exclusive bargaining agent for employees covered by this Agreement. This Agreement shall apply to employees working in the classifications listed in Appendix "A" and to any other classifications that may be established within the scope of the duties now included within these classifications. Excluded from the bargaining unit are Registered Nurses, Office Clerical employees, Activity Workers, Social Workers, Supervisors, and Administrative personnel, as defined in the Labor Management Relations Act of 1947, as amended.

<u>Skyline Convalescent Hospital:</u> The Employer recognizes the Union as the exclusive bargaining agent for all employees of the Employer excluding LVNs, Registered Nurses, Office Clerical, Activity Workers, Assistant Supervisors, Supervisors and Administrative Personnel as defined in the Act.

<u>Vale Care Center:</u> The Facility recognizes the Union as the exclusive bargaining agent for all employees whose classifications are listed in Appendix A hereof. Excluded from the bargaining unit are Registered Nurses, clerical workers, guards, watchmen, and supervisors as defined in the National Labor Relations Act, as amended.

EXHIBIT ___A___, PAGE _58_

# APPENDIX "C" - FRUITVALE CARE

Effective February 1, 1996, bargaining unit employees of Fruitvale Care will be part of the Northern California Regional Master Agreement and will be covered by all of its terms and conditions with the following exceptions:

1.  **Section 13 B. - Categories of Employees**
    Current regular part-time employees enjoying pro-rated benefits as of May 1, 1996, will maintain the benefits as long as they remain regular part-time employees. However, anyone becoming a regular part-time employee after May 1, 1996 will receive a differential in lieu of benefits, as provided for in Section 13 of the Northern California Regional Master Agreement.

2.  **Section 22. - Health, Dental and Vision**
    The employer contribution will be as provided in the Northern California Regional Master Agreement, except that Fruitvale Care employees who were receiving 100% Employer contribution (employees with five (5) or more years of service as of March 2, 1994) will continue to do so.

    Fruitvale Care employees will maintain their current Dental Plan. The seven Fruitvale Care employees (Pamela Carlisle, Linda Carr, Candelaria Fabian, Jose Giron, Marife Hughes, Joannie Livings, and Margarita Sanchez) who currently enjoy Employer-paid dependent dental coverage will maintain that benefit. However, no additional employees will receive Employer-paid dependent dental coverage.

3.  **Section 23. - SEIU National Industry Pension Plan**
    Fruitvale Care employees will be covered by the provisions of this Section effective January 1, 1997.

EXHIBIT ___A___ PAGE 59

MARINER  POST-ACUTE
NETWORK, INC.

SEIU HEALTH CARE
WORKERS UNION
LOCAL 250, AFL-CIO

By: _Julia Halladay for_
Todd Andrews, Region
President

By: _____
Sal Rosselli, President

Date: _12/29/04_

Date: _1/24/01_

EXHIBIT __A__, PAGE __60__

51

# APPENDIX "D" - DIAMOND RIDGE HEALTH CARE CENTER

Effective January 15, 1997, bargaining unit employees at Diamond Ridge Health Care Center will be part of the Mariner Post-Acute Network Northern California Regional Master Agreement and will be covered by all of its terms and conditions with the following exceptions:

1. **Section 13. - Categories of Employees**
   Employees in a regular part-time (working twenty [20] hours per week but less than thirty-two [32] hours per week) status as of January 15, 1997, will be grandfathered with pro-rata benefits, as long as they remain regular part-time employees. Any employee becoming a regular part-time employee after January 15, 1997 will receive differential in-lieu-of benefits, as provided for in Section 13, of the Master Agreement.

2. **Section 19. - Paid Vacations**
   Current employees who have already reached their fourth (4th) and seventh (7th) anniversary shall maintain their current vacation allotment.

3. **Section 22. - Health Dental and Vision**
   The Employer shall offer FHP Take Care as an option to Kaiser "S."

4. **Section 14. - Layoff/Recall**
   Employees affected by layoff shall have recall rights per Section 14, Seniority, of the Master Agreement with the following exceptions:

   a. Recall rights shall apply for a maximum of one hundred twenty (120) days.

   b. Employees must update their current addresses every thirty (30) days, or as needed. Such update shall be in writing.

EXHIBIT___A___,PAGE_61_

52

c.   Recall shall be by seniority within classification.

d.   Employees recalled shall notify the facility of their intent within two (2) days of receiving a certified letter. Employees will return to work within five (5) days.

**MARINER POST-ACUTE NETWORK, INC.**

**SEIU HEALTH CARE WORKERS UNION LOCAL 250, AFL-CIO**

By: _Julia Halladay for_          By: _(signature)_
Todd Andrews, Region
President

Sal Rosselli, President

Date: _12/29/04_          Date: _1/24/05_

EXHIBIT ___A___, PAGE ___62___

53

# APPENDIX "E" - VALE CARE CENTER

Effective February 1, 1997, bargaining unit employees at Vale Care Center shall be part of the Northern California Regional Master Agreement and shall be covered by all of its terms and conditions with the following exceptions:

1. **Section 13. - Categories of Employees**
   Employees who are in part-time status at Vale effective January 1, 1997, will retain pro-rata part-time status benefits for which they are now eligible (and participating), so long as they maintain their part-time status.

2. **Section 17. - Hours of Work**
   Concerning issues of permanent vs rotating assignments, the Employer agrees that Section 17 G of the Regional Master will apply.

**MARINER POST-ACUTE NETWORK, INC.**

**SEIU HEALTH CARE WORKERS UNION LOCAL 250, AFL-CIO**

By: _Julia Halladay for_      By: _Al Per_

Todd Andrews, Region President

Sal Rosselli, President

Date: _12/29/04_

Date: _1/24/05_

EXHIBIT _A_, PAGE _63_

54

# APPENDIX "F" – CREEKSIDE

In the event that additional AB1629 money is available for Creekside in June 2005, the parties will re-open negotiations for sick leave, second floating holiday and SEIU Pension Plan.

## Section 18F – Wages

Any employee regularly scheduled to work PMs or NOCs shall receive $0.05 added to their base wage rate.

**MARINER POST-ACUTE NETWORK, INC.**

**SEIU HEALTH CARE WORKERS UNION LOCAL 250, AFL-CIO**

By: _Julia Halladay for_
Todd Andrews, Region President

By: _[signature]_
Sal Rosselli, President

Date: _12/29/04_

Date: _1/24/01_

EXHIBIT _A_, PAGE _64_

# MEMORANDUM OF UNDERSTANDING

Preface

This Agreement has been entered into between Health Care Workers Union, SEIU Locals 250, and 434B (hereinafter referred to as the "Union") and Mariner Health Care Management Company (Hereinafter referred to as the "Employer").

This document amends the existing Northern California Regional Master Collective Bargaining Agreement between the parties dated September 15, 2001 through April 30, 2004, as well as the template bargaining agreement for Tarzana. All terms and conditions currently in effect shall remain in effect, unless otherwise agreed to by the parties.

Recognition

The Employer recognizes the Union as the exclusive collective bargaining agent for a collective bargaining unit comprised of all full-time, part-time, and casual/on call employees. Said bargaining unit is comprised of classifications currently outlined in Section 1 of the Collective Bargaining Agreement between the parties, excluding registered nurses, office and clerical workers, medical records clerks, activity workers, confidential employees, professional employees, supervisory employees and guards, as defined in the National Labor Relations act, as well as those employees previously excluded in Appendix E – Previous Recognition Clauses and the agreement reached September 12, 2003 with Local 434B, at the Employer's facilities as follows:

Almaden Care Center, Diamond Ridge Health Care Center, Driftwood Healthcare Center, Excell Care Center, Florin Healthcare Center, Fremont Healthcare Center, Fruitvale Care Center, Hayward Hills Convalescent Hospital, Parkview Convalescent Hospital, Skyline Convalescent Hospital – San Jose, Tarzana Rehabilitation & Care Center and Vale Care Center.

EXHIBIT _A_, PAGE _65_

This includes any other classification that may be established within the scope of the duties now included within those classifications.

Any new classifications established during the term of the Agreement shall be subject to negotiations between the Employer and the Union.

## Labor-Management Cooperation Fund

The Employer hereby agrees to contribute one half (1/2) of one percent (1%) of each employee's hourly wage for each hour worked into a Trust Fund known as the Labor-Management Cooperation Committee for the Advancement of California Nursing Homes.

The Employer further agrees to abide by the Trust Agreement of said Trust Fund, as well as all the rules, regulations and resolutions that the Trustees of said Trust fund may, from time to time, adopt. By executing this Agreement, the Employer acknowledges receiving a copy of the Trust Agreement, the Employer acknowledges receiving a copy of the Trust Agreement and confirms that it is bound to executive a subscriber's agreement for said trust fund.

## Wages

This shall be an across-the –board wage increase of thirty cents (30¢) an hour added to the employees base hourly wage rate and to the scale for all employees retroactive to August 1, 2003.

## Expiration Date

The expiration date for the agreement covered by this Memorandum of Understanding, as well as other agreements amended by its terms, shall be June 15, 2004. The parties agree to reopen the contract for the purpose of ensuring that the facilities receive the amount for which they are eligible under the California Wage Adjustment Rate Program. The Parties also agree that, should the wage Adjustment Rate Program (WARP) be funded and/or activated in 2004, any provisions of this agreement and other agreements amended by it required for

EXHIBIT ___A___, PAGE _66_

participation in WARP, as defined in the final instructions from the California Department of Health Services releases, will remain in effect until July 31, 2004 or the end of the defined WARP commitment period.

**FOR THE EMPLOYER**                    **FOR THE UNION**

By: *Julia Halladay*                    By: *Diane Dally*
    Mariner Health Care                  Service Employees
    Management Group                     International Union

Date: 12/39/04                          Date: 1/20/65

EXHIBIT____A____,PAGE __67__